THOMAS S. FERRANTE, PLAINTIFF, v. THOMAS McGINNIS AND FEDERAL INSURANCE COMPANY, JOINTLY, SEVERALLY, AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 26, 1964.

*Mr. Jack M. Werner,* for plaintiff.

*Mr. Leon A. Wingate, Jr.,* for defendant.

McGANN, J. C. C. (temporarily assigned). This matter is before the court on a motion by the plaintiff who was engaged by defendant, Thomas McGinnis, t/a Weiderspolin

and McGinnis, Inc., to perform certain labor and supply certain materials in connection with the construction of the Memorial Presbyterian Church, Wenonah, Gloucester County, New Jersey. Thomas McGinnis, t/a Weiderspolin and McGinnis, Inc., was the subcontractor of the general contractor, Prince Concrete Co. The general contractor had provided a bond written by Federal Insurance Company. The plaintiff, Thomas S. Ferrante, now seeks to recover the sum of $3,000, the balance due on the contract with McGinnis in the original amount of $8,380.

The movant maintains that he is entitled to recover under the bond as a subcontractor. Admittedly, Ferrante was not a subcontractor of the prime contractor, Prince Concrete Co.

The bond given in this case was not identical to, but was substantially in keeping with, the form of bond prescribed under *N. J. S.* 2A:44-147. The defendant surety company, Federal, maintains that this section applies to public works and public bonds; and further says that the bond given by McGinnis as principal and supplied by the surety, Federal, is not identical to the form prescribed by statute. The defendants also urge that Ferrante is a subcontractor of a subcontor and that under the rationale of the case of *Morris County Industrial Park v. Thomas Nicol Co.,* 35 *N. J.* 522 (1961), he is not covered.

After a careful analysis, I find that the *Morris County Industrial Park* case is not apposite because there the court was dealing with the claim of a supplier of a materialman.

In the present case, having in mind that the form of the bond is substantially like the form set out in the statute, *supra,* the rationale in the case of *Graybar Electric Co. v. Continental Casualty Co.,* 50 *N. J. Super.* 289, 296 (*App. Div.* 1958) is applicable. The court there said:

"Consistent with this contract requirement, defendant furnished the bond, the obligation of which is to pay 'all lawful claims * * * for labor performed' or 'materials * * * furnished.' The bond further provides that it shall be for the benefit of 'any subcontractors, materialmen, laborer, person, firm or corporation having a just

claim.' Again, there is apparent neither such disclaimer nor limitation as urged by defendant. Nor can we interpolate such restrictive language."

In the bond in question, the language was, *inter alia* "* * * and shall pay all lawful claims of sub-contractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of *any materialmen, subcontractors or laborers having a just claim."*

As was said in the *Graybar* case, *supra,* there is neither such a disclaimer nor limitation as urged by the defendant, Federal. In short, *Graybar* holds that where identical language of the statute, *N. J. S.* 2A:44–147, is used in connection with a private building project, the cases construing bonds on public projects must control; and further holds that such a situation "gives rise to a cause of action by one not privy to the bond and regardless of how remote from the promisee, provided he had furnished labor or materials for the construction involved." See *Newton A. K. Bugbee & Co., Inc. v. Consolidated, etc., Co.,* 111 *N. J. L.* 323 *(E. & A.* 1933) (other collated cases).

Having in mind that the language of the bond in question is "for the benefit of *any materialmen, subcontractors or laborers having a just claim,"* the court must conclude that the defendant surety did not intend to exclude a subcontractor having no privity with the prime contractor. If it were so intended, the scope of the language of the bond is lacking in specificity.

It was said in the case of *Paley v. Barton Savings and Loan Assn.,* 82 *N. J. Super.* 75, 83 *(App. Div.* 1964):

"If it is at all possible, a court will attach a sufficiently definite meaning to the terms of a bargain to make it enforceable, see *Goldberg v. Commercial Union Ins. Co. of N. Y.,* 78 *N. J. Super.* 183, 190 *(App. Div.* 1963), and ambiguous words would be interpreted most strongly against the party who used them in cases of fair doubt as to their scope, see *Buscaglia v. Owens-Corning Fiberglas,* 68 *N. J.*

*Super.* 508, 519–520 (*App. Div.* 1961), affirmed 36 *N. J.* 532 (1962). See also 1 *Williston, Contracts* (3d ed., *Jaeger,* 1957), § 37, *pp.* 110–111."

The court is also mindful that our Legislature has seen fit with reference to public bonds to define the term "subcontractor" as set out in *N. J. S.* 2A:44–126 as follows:

" 'Subcontractor' means a person having a contract under a contractor for the performance of the same work, or any specified part thereof, *and also a person having such a contract with a subcontractor,* for the performance of the same work or any specified part thereof." (Emphasis added)

For the reasons stated, the motion of the plaintiff is allowed. A judgment consonant with the holding of the court when submitted will be entered.